OPINION
{¶ 1} Defendant-appellant William M. Hudson, III, [hereinafter appellant] appeals from his convictions and sentence in the Delaware County Court of Common Pleas on six counts of rape of a minor and the trial court's classification of appellant as a sexual predator. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On April 19, 2002, appellant was indicted on nine counts of rape (counts One, Three — Ten) and one count of felonious sexual penetration (Count Two). Counts One, Three, Five and Seven alleged that the victim was less than 13 years of age. Each of the ten counts alleged that appellant compelled the victim to submit by force or threat of force.
 {¶ 3} These charges arose from allegations that appellant sexually molested his half sister, a minor. According to the minor victim, the molestation began when she was six years of age. It continued until April, 2002, when the victim disclosed the molestation to her mother. Appellant is approximately ten years older than his half-sister. Thus, the molestation and rapes occurred over an eight year period. The victim alleged that while she could identify the dates of possibly ten of the rapes, many more occurred. The rapes began with oral and finger penetration, evolved to forced oral sex and then penile penetration as the minor victim matured.
 {¶ 4} Appellant was arraigned on April 25, 2002, and entered a plea of not guilty to all charges. On October 10, 2002, the State dismissed Counts One, Two, Seven, and Ten of the Indictment.
 {¶ 5} On October 14, 2002, a trial on the remaining counts was conducted. The trial continued through October 16, 2002. Ultimately, the jury returned a verdict of guilty on all six counts.
 {¶ 6} On December 17, 2002, the trial court conducted a sexual predator classification hearing and a sentencing hearing. The trial court classified appellant as a sexual predator. The trial court proceeded to sentence appellant to two life sentences on Counts Three and Five and to two nine-year sentences on Counts Eight and Nine.[1] All of the sentences were ordered to be served consecutively.
 {¶ 7} It is from the conviction, sentence and classification as a sexual predator that appellant appeals, raising the following assignments of error:
 {¶ 8} "I. The trial court committed prejudicial error when it permitted the State of Ohio to present evidence concerning Mr. Hudson's alleged plan to escape from the Delaware County jail.
 {¶ 9} "II. The trial court erred in the definition of force contained in the instruction to the jury.
 {¶ 10} "III. The jury's finding that the defendant was guilty of all charges and that the defendant purposely compelled the victim to submit by force or threat of force as to counts III and V was against the manifest weight of the evidence presented at the trial of this matter.
 {¶ 11} "IV. The court committed prejudicial error by allowing evidence to be presented to the jury which addressed the issue of sentencing and punishment of Mr. Hudson.
 {¶ 12} "V. The trial court's determination that Mr. Hudson should be classified as a sexual predator was against the manifest weight of the evidence presented by the state of ohio at the sexual offender classification hearing.
 I {¶ 13} In the first assignment of error, appellant contends that the trial court committed reversible error when it permitted the State to present evidence concerning appellant's alleged plan to escape from the Delaware County Jail. We disagree.
 {¶ 14} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find the trial court abused its discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 15} Appellant contends that evidence of appellant's alleged plan to escape from jail was impermissibly used to present evidence of appellant's bad character, in violation of Evid. R. 404(A).[2] In addition, appellant argues that the trial court should have determined that the probative value of the evidence was substantially outweighed by the prejudicial effect and thereby ruled the evidence inadmissible pursuant to Evid. R. 403(A). The State contends that the defense "opened the door" to this testimony. Upon review, we agree with the State.
 {¶ 16} This issue arose when the State presented Kerrie Cassidy as a witness. Ms. Cassidy had been in a relationship with appellant. Appellant and Ms. Cassidy had a child together as a result of their relationship.
 {¶ 17} On direct examination, the State had Ms. Cassidy identify several letters which she claimed she had received from appellant while he was awaiting trial on the charges. The State did not inquire into the content of the letters. However, on cross examination defense counsel delved into the contents of the letters.
 {¶ 18} After asking several questions about the love appellant expressed for Ms. Cassidy and their child, Ms. Cassidy stated that she doubted appellant's sincerity. Defense counsel then asked the following line of questions:
 {¶ 19} "Q. You did [doubt appellant's sincerity] ? Okay. Is that why you turned them [the letters] over to the police?
 {¶ 20} "A. No, that is not why I turned them over to the police.
 {¶ 21} "Q. Did you turn all of the letters you received from him over to the police?
 {¶ 22} "A. Yes, I did.
 {¶ 23} "Q. Did they ask you for any letters from Billy?
 {¶ 24} "A. Yes, they did.
 {¶ 25} "Q. Did you voluntary — you had letters, did they say do you have any writings from Billy?
 {¶ 26} "A. I volunteered and they asked me. . . .
 {¶ 27} "Q. Was he — did he continue to write you letters even after you turned the letters over to the police?
 {¶ 28} "A. Yes, he did.
 {¶ 29} "Q. You took these additional letters in?
 {¶ 30} "A. Yes, I did.
 {¶ 31} "Q. Were you ever threatened by any kind of action by the police?
 {¶ 32} "A. No, I wasn't.
 {¶ 33} "Q. They never suggested that you might be involved in any kind of crime if you didn't turn those letters over?
 {¶ 34} "A. At one point yes, they did." Transcript of Proceedings, pgs. 306-308.
On redirect, the State asked to approach the bench and stated that defense counsel had just opened the door to the escape plans in the letters by asking Ms. Cassidy if she was threatened with charges by turning over the letters. Thereupon, the side-bar discussion concluded. Id. at 310.
 {¶ 35} The record then shows that the State proceeded to ask the following questions:
 {¶ 36} "Q. Ms. Cassidy, Mr. Birch asked you about when the police officers asked you about the letters and threatened you with charges as well?
 {¶ 37} "A. Yes.
 {¶ 38} "Q. How did this come about?
 {¶ 39} "A. They were, from what I was told, they were following Mr. Hudson through the mail and over the phone conversations, and they had known about some things he was trying to attempt.
 {¶ 40} "Q. Like what?
 {¶ 41} "A. Escaping from Delaware County Jail. Transcript of Proceedings, pgs. 310-312.[3]
 {¶ 42} We agree with the State that the defense opened the door to testimony concerning the escape plan. Prejudicial error will not be found when the defense "opens the door" to this evidence. See State v. Greer
(1988), 39 Ohio St.3d 236, 243, 530 N.E.2d 382; State v. Hartford
(1984), 21 Ohio App.3d 29, 31, 486 N.E.2d 131. Accordingly, because the defendant opened the door to testimony about the escape plan, we do not find it constitutes reversible error.
 {¶ 43} Accordingly, we find that the trial court did not abuse its discretion in permitting the State to present evidence of the escape plan.
 II {¶ 44} In the second assignment of error, appellant argues that the trial court erred when it gave a jury instruction for the element of force based on family relationship. The trial court gave the following jury instruction, over the objection of defense counsel:
 {¶ 45} "The Court: When the relationship between the victim and the defendant is familial, the element of force need not be openly displayed or brutal. It can be subtle, slight, psychological or emotionally powerful.
 {¶ 46} "If you find beyond a reasonable doubt that under the circumstances in evidence the victim's willingness was overcome by fear, duress or intimidation, then the element of force has been proven."
 {¶ 47} Appellant argues that such a jury instruction is limited to situations involving parents, step parents or other such parental relationships. Appellant argues it was error to give such instruction when the defendant is a sibling of the victim. The State responds that the familial force instruction has not been limited to only parents and that because appellant was 10 years older than the victim and often left alone with his younger step sister, he was in a position of authority. Further, the State contends that appellant was not prejudiced because the element of force was proven when the victim testified that appellant told her not to tell anyone and the victim feared that if she did tell anyone, appellant would harm her.
 {¶ 48} We agree with the State that appellant has not been prejudiced because the element of force was proven, even if the trial court erred in giving the familial force instruction.
 {¶ 49} Appellant was charged with and convicted of forcible rape, in violation of 2907.01(A)(2). Revised Code 2907.01(A)(2) prohibits sexual conduct where the offender "purposely compels the other person to submit by force or threat of force." Appellant was also convicted of statutory rape with a force specification. Revised Code 2901.01(A) defines "force" as any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." The element of force is established when surrounding circumstances lead the victim to fear the use or threat of force. State v. Schaim (1992), 65 Ohio St.3d 51,600 N.E.2d 661. As such, a threat of force can be inferred from the circumstances surrounding sexual conduct. Id. at 55. Direct force is not necessary. The element of force is proven when an offender "creates a belief that physical force will be used if the victim does not submit." Id.
 {¶ 50} In the case sub judice, the minor victim testified as to why she submitted to her older half brother. The victim first testified that she did not disclose what appellant did to her because when appellant first molested her, appellant told her that her parents would kick her out, believing that it was her fault. The victim believed she would be disowned and her parents would no longer want her as their daughter. Transcript of Proceedings, at pg. 437.
 {¶ 51} The victim then testified as to how appellant threatened her after the first time appellant molested her. The victim testified that the first time she was molested by appellant, appellant told her not to tell and implied something bad would happen if she did. When asked why she said the threat was an implication, the victim stated that appellant said it "in a way that there was no other way to interpret it. He said it very cruelly and very manipulatively. And it was obvious what his intent was." Transcript of Proceedings, pgs. 441-442.
 {¶ 52} Later, the minor victim testified as to why she continued to comply when she was 11 or 12 years of age. The victim testified that she acted out of fear. She stated that appellant intimidated her so much and she knew if she didn't perform willingly, "he would perform it violently." Id. at pg. 450. The victim testified that she knew that "it was either do it the nice way or do it the hard way." Id.
 {¶ 53} Lastly, the minor victim testified as to her perception of appellant and violence. She testified that she had heard from her mother of a physical fight between appellant and her father. She also stated that she had seen remnants, like a knife cut and other wounds, from fights appellant had been involved in. Id. at 468-472.
 {¶ 54} Upon review, we find that there was sufficient evidence presented to prove the element of force and to demonstrate that, even if the trial court gave an incorrect jury instruction, appellant was not prejudiced by that instruction.
 {¶ 55} Accordingly, appellant's second assignment of error is overruled.
 III {¶ 56} In the third assignment of error, appellant contends that the jury's finding of guilty on all charges was against the manifest weight of the evidence. Further, appellant alleges that there was no evidence that, in regard to counts three and five, appellant purposely compelled the victim to submit by force or threat of force.
 {¶ 57} Our standard of review for manifest weight in criminal matters is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717; See also State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 58} Appellant was charged with multiple violations of R.C.2907.02(A)(1)(b) and R.C. 2907.02(A)(2). As to the R.C. 2907.02(A)(1)(b) counts, the Indictment stated as follows:
 {¶ 59} "[Appellant did] engage in sexual conduct with [Jane Doe], not the spouse of [appellant] and the said Jane Doe being less than thirteen years of age, and purposely compelled Jane Doe by force or threat of force."
 {¶ 60} As to the R.C. 2907.02(A)(2) counts, the Indictment stated as follows:
 {¶ 61} "[Appellant did] engage in sexual conduct with Jane Doe and purposely compelled Jane Doe to submit by force or threat of force."
 {¶ 62} Appellant presents separate arguments in regard to combinations of counts. We will address the counts in the same order and manner as appellant addressed these counts in his merit brief.
 A. Counts Three and Four {¶ 63} Count Three of the Indictment alleged that appellant compelled the victim to engage in sexual conduct with him during the period from December 4, 1997, through December 4, 1998, in violation of R.C. Section 2907.02(A)(1)(b). Count Four of the Indictment alleged that appellant compelled the victim to engage in sexual conduct with him during the period from December 4, 1997, through December 4, 1998, in violation of R.C. Section 2907.02(A)(2). During this time frame, the victim would have been 10 years of age.
 {¶ 64} The victim testified that when she was 10 years of age, appellant first attempted to place his penis inside of her. The victim stated that she could pinpoint her age because she could remember what her house looked like, because it had been rearranged certain ways and she could remember what it looked like. The victim stated that when appellant was molesting her, she would focus on her surroundings. The victim went on to describe this incident in detail including telling the jury how she was too small for intercourse. The victim testified that when she asked appellant to stop because of the pain, appellant stopped and performed oral sex on the victim. Transcript of Proceedings, pgs. 442-444. This incident occurred at the victim's home in Delaware County. Id. at 458.
 {¶ 65} Based upon the victim's testimony we find there was competent credible evidence that appellant violated R.C. 2907.02(A)(1)(b), namely sexual conduct with a person less than 13 years of age who was not the spouse of the offender. Further, the victim testified that appellant threatened her with being ostracized from the family, and implicitly threatened her so as to create a belief in the victim that if she did not comply, he would force her and make it worse. Transcript of Proceedings, pgs. 437, 441-442, 468-472.[4] Accordingly, there was a showing of force or threat of force.
 B. Counts Five and Six {¶ 66} Count Five of the Indictment alleged that Mr. Hudson compelled the alleged victim to engage in sexual conduct with him during the period from December 4, 1998, through April 20, 1999, in violation of O.R.C. Section 2907.02(A)(1)(b). Count Six of the Indictment alleged that Mr. Hudson compelled the alleged victim to engage in sexual conduct with him during the period from December 4, 1998, through April 20, 1999, in violation of O.R.C. Section 2907.02(A)(2). Count six of the Indictment was dismissed after it was merged with count five of the Indictment. The victim would have been age 11 during this time frame.
 {¶ 67} As to these counts, appellant argues that the State of Ohio was not able to adequately address when the incident occurred. However, all that is needed is competent, credible evidence from which the trier of fact could have determined that the offenses occurred on a date reasonably near the dates alleged in the indictment. State v. Wente,
Cuyahoga County App. No. CR-421647, 2003-Ohio-3661 (citing State v.Sellards (1985), 17 Ohio St.3d 169, 171-172, 17 OBR 410, 478 N.E.2d 781, noting, however, that specific dates can be crucial to the defense where age is an element at issue).
 {¶ 68} The victim testified that when she was 11 or 12, appellant had intercourse with the victim. She described the pain she endured and how she tried to push appellant off, admitting that she was not able to do so. Transcript of Proceedings, pgs. 445-448. This incident occurred at the victim's home in Delaware County.[5] Id. at 458.
 {¶ 69} Pursuant to the victim's testimony, there was competent, credible evidence that appellant had sexual conduct with the victim while she was under the age of 13, in violation of R.C. 2907.02(A)(1)(b). Further, in regards to R.C. 2907.02(A)(2) which requires force or threat of force, this Court has previously noted the threats made by appellant. Although these threats may have been made at the beginning of the molestations, the threats were sufficient to carry through to this time period and constitute competent, credible evidence of force or threat of force.
 C. Count Seven and Eight {¶ 70} Count Seven of the Indictment alleged that appellant compelled the alleged victim to engage in sexual conduct with him during the period from December 1, 2001, through March 31, 2002, in violation of O.R.C. Section 2907.02(A)(1)(b). Count Eight of the Indictment alleged that appellant compelled the alleged victim to engage in sexual conduct with him during the period from December 1, 2001, through March 31, 2002, in violation of O.R.C. Section 2907.02(A)(2). During this time frame, appellant would have been 13 or 14 years of age.
 {¶ 71} First, we find we need not address counts seven of the Indictment since it was dismissed by the State. Second, as stated previously, there must only be evidence that shows the offenses occurred on a date reasonable near the dates alleged in the indictment.
 {¶ 72} As to Count Eight of the Indictment, appellant argues that the State of Ohio failed to present any evidence of any alleged incident of sexual conduct between appellant and the victim between the aforementioned dates.
 {¶ 73} The victim testified as follows:
 {¶ 74} "Q. Now, let's move up to when you are 13, this would have been 2001 or so, 2002, 2001. Did the sexual relationship change as you got older?
 {¶ 75} "A. Yes. Vaginally, that was the only change.
 {¶ 76} "Q. So, vaginal sex became more common?
 {¶ 77} "A. Yes.
 {¶ 78} "Q. Is there a particular incident that stands out at this stage?
 {¶ 79} "A. Not really particularly. Like I said, they are all pretty much a ritual. But the one time that he made me do it myself, basically had myself rape myself, I don't understand how he could have done it but he did.
 {¶ 80} "Q. Explain to us what happened on that occasion.
 {¶ 81} "A. After I performed oral sex on him the first time I was sitting in the chair next to the computer, he made me sit on his lap and he put his penis inside me and had intercourse with me on top."
 {¶ 82} "Q. Okay. Where — how did he — I guess the question is, why didn't you, since you were in the position to walk away, why didn't you walk away?
 {¶ 83} "A. He had his hands on my hips and somehow forced, I don't know really, I just did it, he wouldn't leave me alone.
 {¶ 84} Transcript of Proceeding, pgs. 450-452. This incident occurred at the victim's home in Delaware County. Id. at 458.
 {¶ 85} This Court finds that there was competent, credible evidence to support the jury's decision. The victim testified to compelled sexual conduct during or around the general period stated in the indictment. Count Eight does not allege that the victim was under the age of 13 and it is clear that the victim testified to sexual conduct at or around the time stated in the indictment. Further, this Court has previously held that appellant threatened the victim with ostracism from the family and implicitly threatened the victim with possible force if she failed to comply. Although these threats were made much earlier than this offense, under these circumstances, we find that the compulsion continued through the molestations.
 {¶ 86} Accordingly, we find that appellant's convictions were not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.
 IV {¶ 87} In the fourth assignment of error, appellant contends that the trial court committed prejudicial error when it allowed evidence to be presented to the jury which addressed the issue of sentencing and punishment of appellant. Appellant points this court to several letters written by appellant which were read into evidence by the State on the second day of trial. In those letters, appellant makes references to potential sentences faced by appellant. For example, appellant wrote that "I'm fighting for my life" and "a potential sentence of up to 45 years." After the State read those statements into the record, the State motioned to have the statements concerning sentencing and punishment redacted from the exhibits and requested that the trial court issue a curative instruction.
 {¶ 88} Appellant contends on appeal that those documents, which he asserts alluded to the possibility of a life sentence, pertained to matters outside the province of the jury. Appellant concludes that he was unfairly prejudiced when the jury was essentially given a role in determining appellant's sentence.
 {¶ 89} Admittedly, the Ohio Supreme Court has held that the jury is not to play any role in sentencing an offender. See State v. Grant
(1993), 67 Ohio St.3d 465, 482 620 N.E.2d 50. However, we find no grounds for reversal.
 {¶ 90} Defense counsel did not object when these letters were read to the jury. Accordingly, any error will be reviewed under a plain error standard of review. Crim.R. 52(B). Under the plain error doctrine, reversible error occurs only if "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. Further, notice of plain error is to be taken only `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. Id. at paragraph three of the syllabus.
 {¶ 91} We find no plain error. In the face of the testimony of the minor victim, even if the comments concerning the sentences faced by appellant or the seriousness of the crimes of which appellant was accused were error, it was not plain error. Rather, in a case such as this, such comments may have actually been beneficial to appellant's case. The comments in the letters made it clear that these were serious charges. The comments may have actually caused the jury to be more cautious when deciding the case.
 {¶ 92} The fact that these comments may have been beneficial to the defense is reflected in the way defense counsel reacted to the situation. As stated above, defense counsel did not object when these comments were read to the jury. Further, when the State requested a curative instruction and attempted to have any comments on the sentences redacted from the letters, defense counsel essentially asked the trial court to deny the State's request.[6]
 {¶ 93} Lastly, we note that the trial court gave the jury an instruction which clearly stated that the jury could not discuss or consider the subject of punishment. Transcript of Proceedings, pg. 685. The jury was instructed that their duty was confined to the determination of whether or not the State proved appellant's guilt. Id.
 {¶ 94} Thus, upon review, we find that the reading of the comments in the letters concerning the sentences faced by appellant was not plain error.
 {¶ 95} Appellant's fourth assignment of error is overruled.
 V {¶ 96} In the fifth assignment of error, appellant argues that the trial court's determination that appellant should be classified as a sexual predator was against the manifest weight of the evidence presented at the sexual offender classification hearing. We disagree.
 {¶ 97} Revised Code 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Appellant does not contest the trial court's finding that he was convicted of sexually oriented offenses under R.C. 2950.01(D). Appellant asserts that the State failed to present sufficient evidence that it is more probable than not that appellant is likely to engage in the future in one or more sexually oriented offenses.
 {¶ 98} In making a determination as to whether an offender should be adjudicated a sexual predator, the trial court shall consider all relevant factors, including, but not limited to all of the factors specified in division (B)(3) of R.C. 2950.09. See R.C.2950.09(C)(2)(b).[7] The trial court shall determine an offender to be a sexual predator if the evidence presented convinces the trial court by clear and convincing evidence. R.C. 2950.09(C)(2)(b).
 {¶ 99} We review appellant's assignment of error under the manifest weight of the evidence standard set forth in C.E. Morris Co. v. FoleyConstruction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.
 {¶ 100} We find that the trial court's decision to classify appellant as a sexual predator is supported by competent, credible evidence and not against the manifest weight of the evidence. Prior to the conviction sub judice, appellant had a prior conviction for unlawful sex with a minor, in addition to multiple other convictions as an adult and a juvenile.
 {¶ 101} There was a significant age difference between appellant and the victim. At the time that the offenses started, appellant was about 16 years of age and the minor victim was only age 6. This was not an isolated incident. The molestation continued over a period of years. Appellant was the minor victim's half brother. The minor victim was often left in appellant's care by the parents. Thus, appellant was in somewhat of a position of authority over the minor victim. Appellant was manipulative of the situation and made statements that the victim perceived as threats. Lastly, the trial court had before it a psychological evaluation of appellant. In that evaluation, the psychologist stated with a reasonable degree of psychological certainty that appellant was at high risk for committing future sexually oriented offenses.
 {¶ 102} Upon review, we find that the classification of appellant as a sexual predator was not against the manifest weight of the evidence. Appellant's fifth and final assignment of error is overruled.
 {¶ 103} The judgment of the Delaware County Court of Common Pleas is affirmed.
Edwards, J., Gwin, P.J. and Wise, J., Judges concur.
[1] The trial court merged Counts Three and Four and Five and Six for sentencing, sentencing appellant on Counts Three and Five only.
[2] "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions: (1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable." Evid. R. 404(A)(1).
[3] The State proceeded to elicit more information about the plan to escape from Ms. Cassidy. Id. The State subsequently introduced additional information concerning an escape plan when a Detective from the Delaware Police Department read into the record letters written by appellant. However, it must be noted that the letters as a whole concerned more than the planned escape, including statements which were incriminating in regard to the pending sex related charges. In addition, the State presented Detective Leatherman as a witness. Detective Leatherman testified about a recording made of a visitation between appellant and Ms. Cassidy. During that visitation, appellant and Ms. Cassidy discussed the plans for escape.
[4] See assignment of error II for a quote of the victim's testimony concerning force or threat of force.
[5] The victim described another alleged incident of sexual conduct which occurred at appellant's home. Appellant alleges that the victim was unable to state whether or not this encounter occurred in Delaware County. We find appellant's contention moot since this Court's finding is based upon an incident which occurred at the victim's home and not the incident which occurred at appellant's home.
[6] {¶ a} The following discussion occurred at trial between the bench, Attorney Darr, the Assistant Prosecutor, and Attorney Birch, Defense Counsel:
{¶ b}"Mr. Darr [for the State]: First of all, yesterday, some information came in through one of the letters when it was read . . . concerning a potential sentence of up to 45 years, I may be looking at life. We have prepared an exhibit, redacted that information and with a curative instruction, we would like an instruction one way or the other. We presented that to Mr. Birch. Mr. Birch is, at least initially, did not seem to be receptive to that. So we're presenting that to the court.
{¶ c}."* * *
{¶ d} "The Court: What curative instruction do you suggest, Mr. Darr?
{¶ e} "Mr. Darr: Something along the lines that the court has already provided, which is the jury are the triers of fact of the case and not the potential penalty of the case —
{¶ f} "The Court: That will be covered in my general instructions. Any problem with this, Mr. Birch?
{¶ g} "Mr. Birch: Yes, Your Honor, I do have a problem with that. They are the ones that introduced this letter, they are the ones that wanted the letter read to the court, they are the ones that presented a buch [sic] more letters to the court from my client. And the most important part of this is the I'm fighting for my life, I'm fighting for this, I'm fighting for that, they want that redacted out. I don't know how they can have their cake and eat it too."
[7] {¶ a} Those factors are:
{¶ b} "(a) The offender's . . . age;
{¶ c} "(b) The offender's . . . prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
{¶ d} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed . . .
{¶ e} "(d) Whether the sexually oriented offense for which sentence is to be imposed . . . involved multiple victims;
{¶ f} "(e) Whether the offender . . . used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
{¶ g} "(f) If the offender . . . previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender . . . completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender . . . participated in available programs for sexual offenders;
{¶ h} "(g) Any mental illness or mental disability of the offender . . .;
{¶ i} "(h) The nature of the offender's . . . sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
{¶ j} "(i) Whether the offender . . . during the commission of the sexually oriented offense for which sentence is to be imposed . . ., displayed cruelty or made one or more threats of cruelty;
{¶ k} "(j) Any additional behavioral characteristics that contribute to the offender's . . . conduct." R.C. 2950.09(B)(3).