[Cite as *State v. Goins*, 2022-Ohio-985.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY


STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO.  1-21-29

      v.

MELVIN GOINS,                          O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Lima Municipal Court
Trial Court No. 20CRB01928-A

Judgment Affirmed

Date of Decision:   March 28, 2022


APPEARANCES:

      *F. Stephen Chamberlain* for Appellant

      *David Osborne, Jr.* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Melvin Goins ("Goins"), appeals the June 18, 2021 judgment entry of sentence of the Lima Municipal Court. For the reasons that follow, we affirm.

{¶2} This case stems from the events preceding the death of Brian Brinkman ("Brian"), a resident of a group home for disabled adults, which was operated by Champaign Residential Services, Inc. ("CRSI"). Goins, an employee of CRSI, worked in the group home at which Brian was a resident, and was responsible for caring for the residents of the group home. (June 18, 2021 Tr., Vol. II, at 300-301).

{¶3} On January 19, 2019, when another employee of CRSI, Julie Roberts ("Roberts"), was working at the group home, Brian fell out of his bed. (June 17, 2021 Tr., Vol. I, at 48, 143); (June 18, 2021 Tr., Vol. II, at 258, 308-309). Roberts failed to report Brian's fall as she was required to do. (*Id.* at 143); (*Id.* at 259). Instead, she informed Goins of Brian's fall after he reported for work later that evening. (June 17, 2021 Tr., Vol. I, at 49, 144-145). Further, Goins did not report Brian's fall (or that Brian was acting differently) until January 21, 2021 when Goins reported to his supervisor that Brian needed medical attention because it was unusual for him to require assistance to ambulate from his room to the restroom. (June 17, 2021 Tr., Vol. I, at 49-50, 71); (June 18, 2021 Tr., Vol. II, at 310-312, 314, 316-321). (*See also* Joint Ex. 16-A). After Brian's fall was reported, he was

transported to the emergency room by ambulance "and that was the day that the incident report was made" by Goins. (June 17, 2021 Tr., Vol. I, at 49-50); (Joint Ex. 10A).

{¶4} Brian was diagnosed with a hip fracture and discharged from the hospital into his brother's, Michael Brinkman ("Michael"), care with aftercare instructions, which included pain-medication prescriptions and a follow-up appointment with the Orthopedic Institute of Ohio ("OIO") for the following day. (June 17, 2021 Tr., Vol. I, at 45-46, 113); (June 18, 2021 Tr., Vol. II, at 195); (Joint Ex. 4A). After Brian was discharged from the hospital, Michael returned Brian to the group home along with his medical book in which he put Brian's aftercare instructions and pain-medication prescriptions. (June 18, 2021 Tr., Vol. II, at 196-197, 324). Goins assisted Brian into the residence but failed to look inside Brian's medical book for the aftercare instructions or pain-medication prescriptions. (*Id.* at 326-327). In other words, Goins did not submit an incident report when Brian returned from the hospital reflecting Brian's aftercare instructions as he was required to do. (June 17, 2021 Tr., Vol. I, at 47-48, 125-126); (June 18, 2021 Tr., Vol. II, at 229-230, 263, 328). As a result, Brian missed his follow-up appointment with OIO and his pain-medication prescriptions went unfilled until January 23, 2019 when another staff member found the aftercare instructions and pain-medication

prescriptions in Brian's medical book. (June 17, 2021 Tr., Vol. I, at 47-48, 51); (Joint Ex. 5A).

{¶5} As soon as the unfilled pain-medication prescriptions were discovered on January 23, 2019, Goins went to the pharmacy to fill the prescriptions and administer the medications to Brian. Goins did not report (to his supervisor or CRSI) Brian's new medication or that Brian missed his follow-up appointment with OIO until the next day, January 24, 2019, when Brian refused to get out of bed. (June 17, 2021 Tr., Vol. I, at 51); (June 18, 2021 Tr., Vol. II, at 235, 338-343). When that report was made, Amanda Martinez ("Martinez") a "field associate nurse" with CRSI arrived at the group home to assess Brian. (June 17, 2021 Tr., Vol. I, at 52). Martinez determined that Brian needed to be transported to the hospital by ambulance. (*Id.*). Brian was admitted to the hospital and later died on January 27, 2019. (*Id.* at 104).

{¶6} On October 15, 2020, Goins was charged by complaint for a gross patient neglect in violation of R.C. 2903.34(A)(2), a first-degree misdemeanor, failing to provide for a functionally impaired person in violation of R.C. 2903.16(B), a second-degree misdemeanor, and patient neglect in violation of R.C. 2903.34(A)(3), second-degree misdemeanor. (Doc. No. 2). On October 20, 2020, Goins appeared and entered pleas of not guilty. (Doc. Nos. 4, 5).

{¶7} On March 9, 2021, Goins filed a motion to dismiss the failing-to-provide-for-a-functionally-impaired-person charge, which was granted by the trial court on April 7, 2021. (Doc. Nos. 22, 29, 30).

{¶8} The case proceeded to a jury trial on June 17-18, 2021 on the remaining charges. On June 18, 2021, the jury found Goins guilty of patient neglect, but not guilty of gross patient neglect. (Doc. Nos. 58, 59, 60, 61). That same day, the trial court sentenced Goins to 90 days in jail, with 60 days suspended conditioned on his compliance with the conditions his probation. (Doc. No. 61). In lieu of serving his 30-day jail sentence, the trial court ordered that Goins "may serve **30** days on the E.M.H.A. program * * * ." (Emphasis sic.) (*Id.*).

{¶9} Goins filed his notice of appeal on July 14, 2021. (Doc. No. 66). He raises two assignments of error for our review.

### Assignment of Error No. I

**The Trial Court Erred in Denying Defendant/Appellant's Motion for Acquittal and the Evidence was Insufficient to Support the Jury's Conviction of Defendant/Appellant for the Crime of Patient Neglect and the Jury's Verdict Finding Defendant/Appellant Guilty Beyond a Reasonable Doubt of the Crime of Patient Neglect is Against the Manifest Weight of the Evidence.**

{¶10} In his first assignment of error, Goins argues that his patient-neglect conviction is based on insufficient evidence and is against the manifest weight of the evidence. Specifically, Goins argues that the State did not present any "medical

testimony * * * that provided a direct nexus between [his] acts or omissions and [Brian's] serious physical harm." (Appellant's Brief at 13). Likewise, Goins contends that the weight of the evidence does not support he "aggravated or exacerbated" Brian's harm. (*Id.* at 15).

*Standard of Review*

{¶11} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Thus, we address each legal concept individually.

{¶12} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33,

citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶13} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence Analysis*

**{¶14}** We begin by addressing Goins's sufficiency-of-the-evidence argument as it relates to his patient-neglect conviction. Goins was convicted of patient neglect in violation of R.C. 2903.34(A)(3), which provides, in relevant part, that "[n]o person who owns, operates, or administers, or who is an agent or employee of, a care facility shall" "[c]ommit neglect against a resident or patient of the facility." Goins does not dispute that he was an employee of a care facility.

**{¶15}** For purposes of the statute, "'[n]eglect' means recklessly failing to provide a person with any treatment, care, goods, or service that is necessary to maintain the health or safety of the person when the failure results in serious physical harm to the person." R.C. 2903.33(C)(2). Reckless-mental culpability is defined under R.C. 2901.22, which provides as follows:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C). "'Serious physical harm'" includes:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5). The Revised Code defines "physical harm" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶16} On appeal, Goins argues only that the State presented insufficient evidence that "provided a direct nexus between [his] acts or omissions and [Brian's] serious physical harm." (Appellant's Brief at 13). That is, Goins alleges that the State failed to present "evidence that the omissions [by him] resulted or caused new or additional harm." (*Id.* at 15).

{¶17} Although it is not statutorily defined, many courts—including this court—have grappled with defining causation. *See, e.g.*, Macleod, *Ordinary Causation: A Study in Experimental Statutory Interpretation*, 94 Ind.L.J. 957, 958-959 (noting that, in "[a] series of recent split Supreme Court decisions concerning causation," "the Court's majority has explained—"[a]rmed with dictionaries, thought experiments, intuition-pumping examples from everyday speech, and common sense,"—"that statutory phrases like 'because of' and 'results from' entail

but-for causation as a matter of ordinary usage"); *State v. Carpenter*, 3d Dist. Seneca No. 13-18-16, 2019-Ohio-58, ¶ 47-54. Nevertheless, "it is well established that Ohio law generally defines 'cause' in criminal cases identically to the definition of 'proximate cause' in civil cases." *Carpenter* ¶ 51, citing *State v. Emerson*, 2d Dist. Darke Nos. 2015-CA-24 and 2016-CA-1, 2016-Ohio-8509, ¶ 24. Importantly, "'[i]t is merely a matter of semantics that criminal cases are "cause" and "*result*" and civil cases use "proximate cause" and "proximate result." They mean the same thing.'" (Emphasis added.) *Id.*, quoting *State v. Jacobs*, 8th Dist. Cuyahoga No. 51693, 1987 WL 10047, *2 (Apr. 23, 1987). Therefore, "[f]or a criminal defendant's conduct to be the proximate cause of a certain result, it must be determined if his or her conduct was the actual and legal cause of the result." *Id.*, citing *State v. Lovelace*, 137 Ohio App.3d 206, 216 (1st Dist.1999), citing Lafave & Scott, *Criminal Law*, Section 35, 249 (1st Ed.1972).

{¶18} "There are several tests for actual causation, the most common of which is the 'but for' test; however, there are circumstances under which the 'but for' test is inapplicable and an act or omission can be considered a cause in fact if it was a 'substantial' or 'contributing' factor in producing the result." *Id.* at ¶ 52. *See also Wagoner v. Commonwealth*, 63 Va.App. 229, 250, 756 S.E.2d 165 (2014) (concluding that "where the legislature has not clarified otherwise, this Court should give the phrase 'results in' its ordinary meaning, which imports 'but for' causation).

"In other words, a defendant can still be held criminally responsible where the defendant's conduct combined with other occurrences to jointly result in a legal injury." *Carpenter* at ¶ 52, quoting *State v. Hall*, 12th Dist. Preble No. CA2015-11-022, 2017-Ohio-879, ¶ 72.

{¶19} "The second component of causation—the legal or 'proximate' cause—refers to the foreseeability of the result." *Id.* at ¶ 53. "A '"defendant will be held responsible for those foreseeable consequences which are known to be, or should be known to be, within the scope of risk created by his conduct."'" *Id.*, quoting *State v. Sabo*, 3d Dist. Union No. 14-09-33, 2010-Ohio-1261, ¶ 25, quoting *State v. Losey*, 23 Ohio App.3d 93, 95 (10th Dist.1985). "'"[T]hat means that death [or serious physical harm] reasonably could be anticipated by an ordinarily prudent person as likely to result under these or similar circumstances."'" *Id.*, quoting *Sabo* at ¶ 25, quoting *Losey* at 95.

{¶20} Here, the State presented sufficient evidence that Goins's reckless conduct was the actual and legal "cause" of the result in this case—that is, Brian's serious physical harm. Stated another way, the State presented sufficient evidence that Goins's reckless conduct was a "substantial" or "contributing" factor in producing Brian's serious physical harm and presented sufficient evidence that Brian's serious physical harm could be reasonably anticipated by an ordinarily prudent person as likely to result under these or similar circumstances.

{¶21} At trial, the State presented the testimony of five witnesses in support of its case of patient neglect. Specifically, the State presented the testimony of Michael, who testified that he was provided with Brian's aftercare paperwork and prescriptions when Brian was discharged from the hospital and that he put the aftercare paperwork and prescriptions "in the front pocket of Brian's medical book." (June 18, 2021 Tr., Vol. II, at 195-196). Michael further testified that he returned Brian to the group home after Brian was discharged from the hospital and that he told Goins that he "put the discharge instructions and that there were prescriptions that needed to be filled" "in the front pocket" of Brian's medical book. (*Id.* at 197). According to Michael, Goins responded that that he would "take care of it first thing in the morning." (*Id.* at 197-198).

{¶22} Michael testified that he received a phone call on January 23, 2019 from a woman from Brian's group home asking "if Brian had been given any prescriptions for pain because he was complaining of pain." (*Id.* at 198). Michael testified that he notified the caller of Brian's pain-medication prescriptions and testified that the phone call "surprised" him because he thought that Brian's pain-medication prescriptions "would have been filled." (*Id.*). Furthermore, Michael testified that he advised the caller that he had already informed Goins of Brian's pain-medication prescriptions. (*Id.*).

{¶23} The State also presented the testimony of Detective Jack Miller ("Detective Miller") of the Shawnee Township Police Department, who testified that, because Goins did not review Brian's aftercare instructions, Brian did not appear for his follow-up appointment on January 22, 2019 with OIO as scheduled. (June 17, 2021 Tr., Vol. I, at 51). Detective Miller further testified that he learned through his investigation that Brian's pain-medication prescription was not "picked up from the pharmacy" until January 23, 2019. (*Id.* at 47-48, 51); (Joint Ex. 5A). He testified that another CRSI employee "discovered that not only did [Goins] miss the appointment, [Goins] never filled the scrip [sic]." (June 17, 2021 Tr., Vol. I, at 51). Importantly, Detective Miller testified that, even though Brian's pain-medication prescription was filled on January 23, 2019, Brian did not receive his follow-up care ("while Melvin Goins was working") and "[n]o report was made to the nurse" and "[n]o call to the doctor [was] made until the following morning, which would be [January] 24th." (*Id*. at 51).

{¶24} Furthermore, the State presented the testimony of Shirley Evans ("Evans"), an investigator with the Allen County Board of Developmental Disabilities ("ACBDD"), who testified regarding the policies that CRSI and the ACBDD implemented to adhere to the rules and regulations put forth by the Ohio Department of Developmental Disabilities. Evans identified Joint Exhibit 11A as "the employee file for Melvin Goins for CSRI [sic]" and testified that the exhibit

reflects CRSI's incident-reporting policy, which Goins acknowledged receiving on June 16, 2018. (*Id.* at 127-128, 134); (Joint Ex. 11A).

**{¶25}** As relevant here, Evans testified CRSI employees are required to file an "unusual incident report" "[w]hen an incident happens, and staff are aware of a concern or an injury or illness or a fight or anything that would happen, they are to write an incident report immediately, and no later than the end of their work shift" to ensure that a client receives any necessary care. (June 17, 2021 Tr., Vol. I, at 122). Evans testified that "[a] fall is an unusual incident." (*Id.* at 123). For "unusual incidents," "CRSI, within 24 to 72 hours, depending on when an initial incident report is learned by them, they have that amount of time to report to the [ACBDD]." (*Id.* at 122). However, a fall can be elevated to a "major unusual incident," which requires reporting within 24 hours to the ACBDD. (*Id.* at 125). Furthermore, Evans testified that the ACBDD has a policy which requires a "medical professional to be notified immediately" [a]ny time there's an injury that results in a fall [sic] and the person is not doing the things that they would normally do," on which Goins received training. (June 17, 2021 Tr., Vol. I, at 129-130, 134). (*See also* Joint Ex. 14A).

**{¶26}** Importantly, Evans testified that Goins "did not fill out the proper paperwork to notify the rest of the team [to have] ensured and monitored that Brian received the proper medical treatment." (June 17, 2021 Tr., Vol. I, at 133-134).

Specifically, Goins did not submit an unusual-incident report or call anyone as required by CRSI and ACBDD policy by the end of his shift on January 20, 2019 despite being "told by his coworker that [Brian] fell * * * ." (*Id.* at 134). Likewise, Evans testified that Goins did not submit an unusual-incident report or call anyone as required by CRSI and ACBDD policy reflecting that Brian was "still not walking, he's not doing what he usually does * * * ." (*Id.*). Similarly, Evans testified that, because Brian "went to the hospital on January 21st and was diagnosed with a facture," Goins should have "made a report before the end of [his] shift" and the major-unusual incident should have been reported to the ACBDD within 24 hours. (*Id.* at 125-126).

{¶27} Considering the way in which causation (in Ohio) is defined, when construing the evidence in a light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that Goins, with heedless indifference to the consequences, disregarded a substantial and unjustifiable risk that his conduct was likely to cause Brian serious physical harm. Therefore, we conclude that the State presented sufficient evidence that Goins recklessly failed to provide Brian treatment or care which *resulted in* Brian's serious physical harm. Consequently, Goins's patient-harm conviction is based on sufficient evidence.

{¶28} Having concluded that Goins's patient-neglect conviction is based on sufficient evidence, we next address Goins's argument that his patient-neglect conviction is against the manifest weight of the evidence.

*Manifest Weight of the Evidence*

{¶29} Goins contends that his patient-neglect conviction is against the manifest weight of the evidence because the weight of the evidence presented at trial suggests that Brian's serious physical harm did not result from Goins's conduct. Here, Goins makes many of the same arguments that he makes in his sufficiency-of-the-evidence argument challenging his patient-neglect conviction. That is, Goins argues that, because there is insufficient evidence that his conduct resulted in serious physical harm to Brian, his patient-neglect conviction is also against the manifest weight of the evidence.

{¶30} However, that evidence does *not* outweigh the evidence that we summarized in our sufficiency-of-the-evidence analysis that Goins's reckless conduct resulted in serious physical harm to Brian. Notably, Goins overlooks the substantial evidence presented by the State from which the jury could infer that he, with heedless indifference to the consequences, disregarded a substantial and unjustifiable risk that his conduct was likely to cause Brian serious physical harm.

{¶31} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for

the trier of fact." *State v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671, ¶ 13, citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. *See also State v. Mitchell*, 3d Dist. Union No. 14-19-14, 2019-Ohio-5168, ¶ 32. "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Banks* at ¶ 13, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984). "When examining witness credibility, 'the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" *In re N.Z.*, 11th Dist. Lake Nos. 2010-L-023, 2010-L-035, and 2010-L-041, 2011-Ohio-6845, ¶ 79, quoting *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "'"'A verdict is not against the manifest weight of the evidence because the [jury] chose to believe the State's witnesses rather than the defendant's version of the events.'"'" *State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 44, quoting *State v. Bean*, 9th Dist. Summit No. 26852, 2014-Ohio-908, ¶ 15, quoting *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16.

{¶32} In addition to Michael's, Detective Miller's, and Evans's testimony, the jury also heard the testimony of other witnesses describing the events surrounding Brian's injury. Indeed, the jury was able to compare the State's

witnesses' testimony against the testimony that Goins presented in his defense (including his own testimony), and it is well within the providence of the trier of fact to determine a witness's credibility in making a statement including the prerogative to find a witness not to be truthful. *See State v. Voll*, 3d Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 27. For instance, the jury was able to compare Goins's testimony that Michael did not say anything to him about Brian's condition or regarding Brian's pain-medication prescription against Michael's testimony to the contrary. (June 18, 2021 Tr., Vol. II, at 197-198, 326-327). The jury was also able to compare Goins's testimony and Michael's testimony against Evans's testimony that Michael informed her during their interview that Michael provided Goins with Brian's medical book when he returned Brian to the group home from the hospital on January 21, 2019 and that Goins responded to Michael that "he would take care of it." (June 17, 2021 Tr., Vol. I, at 158).

{¶33} Likewise, the jury was able to weigh Goins's testimony that he is unaware of any CRSI policy regarding family members taking clients to the hospital and that he did not look in Brian's medical book because "[t]here's no reason to look in the medical book" against Evans's testimony that even though she is unaware of a CRSI policy regarding client-medical books, the "responsible thing to do, is to look and see what type of medical information is in their medical book." (June 17, 2021 Tr., Vol. I, at 159); (June 18, 2021 Tr., Vol. II, 326-328).

Consequently, the jury was free to weigh that evidence and infer that Goins, with heedless indifference to the consequences, disregarded a substantial and unjustifiable risk that his conduct was likely to cause Brian serious physical harm. That is, the jury was able to weigh that evidence and infer that Goins's reckless conduct was a "substantial" or "contributing" factor in producing Brian's serious physical harm and the jury was able to weigh that evidence and infer that Brian's serious physical harm could be reasonably anticipated by an ordinarily prudent person as likely to result under these or similar circumstances. Therefore, we cannot conclude that the jury clearly lost its way in concluding that Goins recklessly failed to provide Brian treatment or care which *resulted in* Brian's serious physical harm. Consequently, Goins's patient-harm conviction is not against the manifest weight of the evidence.

{¶34} Goins's first assignment of error is overruled.

**Assignment of Error No. II**

**Ineffective Assistance of Counsel by Failing to Request a Jury Instruction on Cause.**

{¶35} In his second assignment of error, Goins argues that he was denied his right to effective assistance of counsel. Specifically, Goins argues that his trial counsel was ineffective for failing to request a jury "instruction regarding cause." (Appellant's Brief at 18).

*Standard of Review*

**{¶36}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

**{¶37}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting

*Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

**{¶38}** "'An attorney's decision not to request a particular jury instruction is a matter of trial strategy and does not establish ineffective assistance of counsel.'" *State v. Harrison*, 3d Dist. Logan No. 8-14-16, 2015-Ohio-1419, ¶ 89, quoting *State v. Morris*, 9th Dist. Summit No. 22089, 2005-Ohio-1136, ¶ 100, citing *State v. Fisk*, 9th Dist. Summit No. 21196, 2003-Ohio-3149, ¶ 9, citing *State v. Hill*, 73 Ohio St.3d 433, 443 (1995), and citing *State v. Oates*, 3d Dist. Hardin No. 6-12-19, 2013-Ohio-2609, ¶ 9. Nevertheless, "[a] trial court's instructions to a jury must correctly, clearly, and completely state the law applicable to the case." *State v. Orians*, 179 Ohio App.3d 701, 2008-Ohio-6185, ¶ 10 (3d Dist.). Further, "a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged." *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 37, quoting *State v. Adams*, 62 Ohio St.2d 151, 153 (1980).

**{¶39}** Here, Goins contends that his trial counsel should have requested the Ohio Jury Instruction relating to cause. Even assuming without deciding that an instruction relating to causation should have been given to the jury, Goins's trial counsel's failure to request the instruction was harmless since the evidence against

Goins as to the offense of which the jury convicted him was overwhelming. *See Harrison* at ¶ 91; *State v. Foster*, 8th Dist. Cuyahoga No. 95209, 2011-Ohio-2781, ¶ 69 (concluding that "even if Foster's counsel should have requested the jury instruction, any error did not prejudice Foster's case since there was overwhelming evidence to convict him"). In other words, based on our conclusion in our sufficiency-of-the-evidence analysis, since the State presented sufficient evidence that Goins recklessly failed to provide Brian treatment or care which resulted in Brian's serious physical harm, Goins cannot demonstrate that he was prejudiced by his trial counsel's failure to request the instruction. *See State v. Hudson*, 5th Dist. Delaware No. 02 CAA 12065, 2003-Ohio-7049, ¶ 54 (concluding that Hudson could not demonstrate that he was prejudiced by an incorrect jury instruction when there was sufficient evidence presented to prove his guilt). Consequently, Goins cannot demonstrate that the outcome of his trial was "'affected by the lack of instruction.'" *Harrison* at ¶ 91, quoting *State v. Ross*, 8th Dist. Cuyahoga No. 98763, 2013-Ohio-3130, ¶ 39. Therefore, we conclude that Goins failed to establish that his trial counsel was ineffective for failing to request the Ohio Jury Instruction relating to cause.

{¶40} Goins's second assignment of error is overruled.

**{¶41}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and WILLAMOWSKI, J.J., concur.**

**/jlr**