[Cite as *State v. Wainwright*, 2020-Ohio-623.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

GERALD WAINWRIGHT,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 MA 0023**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2018 CR 97

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor*, and *Atty. Ralph M. Rivera*, Assistant Prosecuting Attorney, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty. Edward Czopur,* DeGenova & Yarwood. Ltd., 42 North Phelps Street, Youngstown, Ohio 44503, for Defendant- Appellant.

Dated: February 21, 2020

**D'Apolito, J.**

{¶1}    Appellant Gerald Wainwright appeals his convictions for two counts of felonious assault against a peace officer, violations of R.C. 2903.11(A)(2)(D), felonies of the first degree, with firearms specifications pursuant to R.C. 2941.145, following a jury trial in the Mahoning County Court of Common Pleas.  R.C. 2903.11, captioned "Felonious Assault," reads, in pertinent part, "No person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or a dangerous ordnance."  If the victim is a peace officer, felonious assault is a felony of the first degree.  R.C. 2903.11(D)(1)(a).

{¶2}    Appellant contends that the trial court abused its discretion when it provided a flight instruction to the jury, and that his convictions are against the manifest weight of the evidence.  Appellant does not challenge his conviction for one count of having a weapon while under disability, a violation of R.C. 2923.13(A)(1)(2), a felony of the third degree, which was tried to the bench.  For the following reasons, Appellant's felonious assault convictions are affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶3}    The following facts are taken from the testimony offered at trial.  Officer Edwards was unavailable at trial and provided his testimony on October 26, 2018.  His recorded testimony was played for the jury by stipulation of the parties.

{¶4}    At approximately 2:30 a.m. on January 27, 2018, Youngstown Police Department Officers Timothy Edwards and Brandon Caraway were patrolling a high crime area on the City's south side in the vicinity of the former Princeton Junior High School (now Alpha School of Excellence) ("school").  They encountered Appellant, who was walking northbound in the southbound lane of Hudson Avenue.  Appellant was wearing a hoodie and his face was covered with a mask.  He was carrying a book bag.

{¶5}    Although it was approximately 35 degrees that evening, the sidewalks were clear of snow.  A Youngstown municipal ordinance prohibits pedestrians from walking in the roadway when the use of a sidewalk is practicable.  Violation of the code section

Case No. 19 MA 0023

constitutes a minor misdemeanor and is not an arrestable offense. Officer Caraway testified that the officers reversed the course of the patrol car in order to stop and speak with Appellant, so as to identify him, check for warrants, and explain the danger associated with walking in the street at 2:30 a.m.

{¶6} When the officers activated the lights on the patrol car and began following Appellant, his pace quickened. Officer Caraway twice activated the air horn, which prompted Appellant to look back briefly, but he did not stop walking. Then, Appellant ran across the street in a northeast direction and entered the gate of the fence of the school parking lot.

{¶7} Appellant testified at trial that he was attempting to avoid a confrontation with the officers because he was carrying a Kahr Luger CW9 9 mm semiautomatic pistol and he was under a disability as a result of a previous felony conviction. Appellant had just smoked marijuana at a friend's house and he was walking home to the west side of Youngstown. He explained that his friend, who he refused to identify, gave him the weapon for protection on the approximately one-and-one-half-hour journey through the City.

{¶8} Officer Caraway testified at trial that the officers followed Appellant in the patrol car, but left a "reactionary gap" of 30 to 40 feet in order to allow them to see if he discarded drugs or weapons and to prevent them from injuring him should he trip and fall. When Appellant realized that he was fenced in the school parking lot, he discarded the book bag and made a circle towards his entry point. According to the officers, Appellant then turned and fired the 9 mm pistol at the patrol car. The officers testified that Appellant did not break his forward stride, but that he turned his body just enough to fire at the patrol car.

{¶9} Officer Caraway did not see Appellant draw the weapon, only turn and fire. Specifically, Officer Caraway testified that Appellant was "not stationary, he was still moving." (Trial Tr., p. 226), but that the weapon was "aimed directly at [the patrol car.]" (*Id.*, p. 227.) Officer Edwards stated that he observed Appellant "fidgeting around with something," and then Appellant "pulled a pistol from somewhere on his person * * * he turned, pointed the pistol at [the officers], and then he fired a shot." (*Id.*, p. 276-277.)

{¶10} Three spent 9 mm casings were found at the scene, and were identified at trial by a firearms expert from BCI as having been ejected from Appellant's weapon. Officer Caraway testified that he heard two shots. Officer Edwards testified that he heard only one shot. Both officers conceded that they did not see a muzzle flash or flashes. Edwards explained that the lights on the patrol car are very bright and may have "washed [ ] out" the muzzle flash. (*Id.*, p. 314.)

{¶11} Appellant admitted that he "got nervous, got scared" and discharged the weapon. (*Id.* at 536.) He could not recall how many bullets were fired. However, Appellant testified that he discharged the weapon "straight in the air, straight ahead of [him]." Appellant further testified that "[he] was trying to stop the officers from chasing [him.] And to show that [he] was not trying to cause harm, [he] threw [the weapon] down, around that same time." (*Id.* at 537.)

{¶12} Both officers testified that they feared for their lives and were unaware that Appellant had discarded the weapon until he was apprehended. Officer Caraway crouched behind the dashboard and opened his door in order to exit the patrol car and engage Appellant on foot. He testified that he would not have ducked beneath the dashboard if Appellant had fired the pistol in the air. Officer Caraway exited the vehicle and discharged his weapon approximately six times.

{¶13} Meanwhile, Officer Edwards, who was in the driver's seat, immediately returned fire through the windshield. Officer Caraway, who was crouched behind the dashboard at the time, mistook Edwards' return fire for fire from Appellant. After Officer Edwards fired six to eight shots, the windshield became "glazed over," so he exited the patrol car to give chase on foot. Both officers were armed with standard-issue YPD Sig Sauer P226 .40 caliber pistols.

{¶14} The officers began their foot pursuit southbound on West Princeton Avenue, each firing several additional rounds at Appellant. After Appellant exited the parking lot, he ran southbound across West Princeton Avenue then up the driveway of the residence at 355 West Princeton Avenue.

{¶15} Officer Edwards, who maintained a distance of roughly 30 feet behind Appellant, noticed a blood trail in a driveway. Officer Caraway moved to the northwest corner of the residence in the event that Appellant reversed his direction. Officer Edwards

fired several additional rounds toward an unattached garage on the property, then fired again as Appellant moved westbound behind the residence at 397 West Princeton Avenue.  At this point, Officer Edwards realized that he had emptied his magazine.  He testified that he reloaded the weapon, but did not discharge the weapon again that evening.

{¶16} Officers Edwards and Caraway reunited at the southwest corner of 397 West Princeton Avenue by the rear door, where they found Appellant "crumpled up" on the ground. (*Id.*, p. 292-294.)  Appellant was ordered by Officers Caraway and Edwards, as well as other officers that had arrived at the scene, to show his hands, but Appellant stood and ran several feet before collapsing by a tree.   He was apprehended in the backyard of the residence at 397 West Princeton Avenue.  The 9 mm pistol was found in the parking lot of the school.  Appellant's DNA was present on the handle of the weapon.

{¶17} According to Officer Edwards, Appellant had bullet wounds in his leg and neck when he was found.  According to Appellant, he was lying on the ground with bullet wounds in his foot and leg when the officers approached him and shot him in the neck.

{¶18}  The patrol car did not sustain any damage as a result of any of the bullets fired by Appellant. The only damage sustained by the patrol car was the result of Officer Edwards firing through the windshield.  Although three spent 9 mm casings with breech marks and firing pin compressions matching the 9 mm pistol were recovered from the scene, no projectiles from the weapon were found.

{¶19}  On January 30, 2018, Captain Jason Simon and Detective Sergeant Ronald Rodway of the Youngstown Police Department interviewed Officer Caraway and Officer Edwards. The officers were interviewed independently of one another and the interviews were recorded.

{¶20}  On February 12, 2018, roughly two weeks after the incident, Appellant was interviewed by Captain Simon and Detective Rodway.  Captain Simon was a member of the shooting team assigned to the officer-involved shooting of Appellant.   Detective Rodway was the detective assigned to the felonious assault case.  Appellant signed a waiver of his right to counsel.

{¶21}  During the interview, Appellant admitted that he smoked marijuana at a friend's house on January 27, 2018, and that his friend, who he declined to identify, gave

him the 9 mm pistol.  Appellant further admitted that he was attempting to avoid a confrontation with the officers that evening because he was a felon under a weapons disability.

**{¶22}**  Despite the foregoing admissions, Appellant repeatedly denied discharging the firearm.  He claimed initially that he tripped and fell, dropped the 9 mm pistol in the parking lot, and then the officers started shooting and struck his foot.  As the officers' pursuit continued, Appellant was shot in the thigh and collapsed.  According to Appellant's statement, he was begging for help when the officers approached and demanded that he show his hands.  Because he was not able to show his hands, the officers shot him in the neck.  As the interview progressed, and Detective Rodway confronted Appellant with ballistics and GSR test results, Appellant ultimately admitted to discharging the weapon a single time into the air.

**{¶23}**  Appellant's manifest weight argument is predicated upon inconsistencies in the officers' trial testimony regarding the position of Appellant's right hand when he fired the 9 mm pistol, and their description of the events during the recorded interviews with Detective Rodway and Captain Simon on January 30, 2018. The recorded interviews were not admitted at trial.

**{¶24}**  On cross-examination, Officer Edwards could not recall whether Appellant used his left or right hand to fire the 9 mm pistol.  When he reenacted Appellant's movements during his recorded trial testimony, Officer Edwards turned back to his right with his right hand to shoot.  After viewing a portion of his January 30th interview, Officer Edwards conceded that he reached across his right side with his left hand when he reenacted Appellant's movements during the interview.  (*Id.*)

**{¶25}**  Officer Caraway conceded at trial that he had his hand out to his side when he reenacted Appellant's movements during the interview.  Officer Caraway explained the position of his hand on cross examination stating, "It's showing that he was pointing it at us.  I might not have reached all the way around."  (*Id.*, p. 249.)  Detective Rodway testified that to the best of his recollection he recalled both officers saying that "they saw the gun pulled * * * turned in their directions."  (*Id.*, p. 519.)

**{¶26}**  Appellant was charged with two counts of felonious assault with firearm specifications and one count of having a weapon while under disability.   The case

proceeded to a jury trial on January 22, 2019 and the jury began its deliberations at 10:02 a.m. on January 28, 2019,   At 11:30 a.m. that same day, the jury posed the following questions to the trial court during deliberations:  (1) "Was police cruiser 205 equipped with a Dash cam?"; (2) If so, was it running?";  (3) "Did Officer Edward's [sic] magazine have any bullets missing when he turned in his gun?";   (4) Can we have the transcripts of Edwards and Carraways [sic] interviews that were referred to during the trial? Paper of interview with Detective Rodway."  The trial court declined to answer the jury's first three questions, then explained that the interviews that the jury requested were not admitted into evidence at the trial.  Deliberations continued until the jury returned its verdicts at 1:30 p.m.

**{¶27}**  Appellant was sentenced to an aggregate term of imprisonment of thirty-five years, comprised of ten years for each felonious assault conviction plus seven years for each firearms specification, plus twelve months for having a weapon while under disability conviction, with all sentences imposed to run consecutively.  This timely appeal followed.

## ANALYSIS

**{¶28}**  Appellant advances two assignments of error challenging his felonious assault convictions:

## ASSIGNMENT OF ERROR NO. 1

**APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS WHEN THE TRIAL COURT IMPROPERLY INCLUDED A FLIGHT INSTRUCTION IN THE JURY CHARGE.**

**{¶29}**  Under Ohio Crim.R. 30(A), a trial court is required to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus; *State v. Joy*, 74 Ohio St.3d 178, 181, 657 N.E.2d 503 (1995) (Jury instructions "must be given when they are correct, pertinent, and timely presented."). In reviewing the record to ascertain the presence of sufficient evidence to support the giving of a proposed jury instruction, an appellate court

should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction. *State v. Palmer*, 80 Ohio St.3d 543, 564, 687 N.E.2d 685 (1997).

**{¶30}** It is well-established that "flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." *State v. Williams*, 79 Ohio St.3d 1, 11, 679 N.E.2d 646 (1997), quoting *State v. Eaton*, 19 Ohio St.2d 145, 160, 249 N.E.2d 897 (1969). An appellate court reviews a trial court's decision whether to give a particular jury instruction under an abuse of discretion standard. *State v. Kaufman*, 187 Ohio App.3d 50, 2010-Ohio-1536, 931 N.E.2d 143, ¶ 103. An abuse of discretion connotes more than an error of judgment; it implies an attitude on the part of the court that is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E .2d 144 (1980). A particular instruction is reviewed in the context of the entire jury charge. *State v. Price*, 60 Ohio St.2d 136, 141, 398 N.E.2d 772 (1979).

**{¶31}** The trial court provided the following instruction regarding flight to the jury:

> Consciousness of guilt. Testimony has been admitted indicating that the defendant fled the scene. You are instructed that fleeing the scene alone does not raise presumption of guilt, but it may tend to indicate the defendant's consciousness of guilt.
>
> If you find that the facts do not support the defendant fleeing the scene, or if you find that some other motive prompted his conduct, or if you find that you - - excuse me - - or if you were unable to decide what his motivation was, then you should not consider this evidence for any purpose.
>
> However, if you find that the facts support the defendant engaged in such conduct, and you decide that he was motivated by a consciousness of guilt, you may, but are not required to, consider the evidence in deciding whether or not he is guilty of the crime charged. You alone will determine the weight, if any, to give to this evidence.

(*Id.*, p. 595-596.)

Case No. 19 MA 0023

**{¶32}** Appellant argues that the trial court committed an abuse of discretion when it instructed the jury on flight. Appellant's trial counsel advanced the following argument regarding the state's proposed flight instruction:

> Your Honor, my objection is focused on the fact that the testimony did show that his flight began on Hudson Avenue prior to the state's allegations of the felonious assault.
>
> I believe this would be very prejudicial and confusing to the jury based on the fact that his fleeing started prior to any of these charges arising. And he never stopped running. This is not a situation where he's being charged with flight after felonious assault only. He began his flight way before that.

(*Id.*, p. 561.)

**{¶33}** Appellant testified that he attempted to evade the officers in order to prevent their discovery of the 9 mm pistol in his book bag. Because the having a weapon while under disability charge was tried at the bench, Appellant argues that any evidence of flight related exclusively to the having a weapon while under disability charge. Appellant contends that the entire chain of events, beginning when he first encountered the police and ending with his physical collapse, constituted flight attributable to his illegal possession of the 9 mm handgun, not the conduct that provided the substance of his felonious assault convictions. He further contends that the jury, based on the questions posed to the trial court during their deliberations, did not believe the officers' testimony. He asserts that "[the jury's] indecision was eventually cleared up with a guilty finding, but only with the flight instruction there to help the jury reach that conclusion." (Appellant's Brf., p. 6.)

**{¶34}** While it is true that Appellant's initial efforts to evade the officers may have been prompted by his desire to conceal the 9 mm pistol in his back pack, that motive necessarily ended when he removed the weapon from the backpack and then discharged it while the officers gave chase. Appellant argues that he exited the school parking lot and attempted to avoid capture by running into the backyards of 355 and 397 West Princeton Avenue because he did not want the officers to know that he was in possession

of a firearm. However, that argument is completely at odds with his admission that he discharged the weapon in the officers' presence. Therefore, we find that the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction, that Appellant's motivation to flee the crime scene was due to consciousness of his guilt. *Palmer*, *supra*, at 564.

**{¶35}** Even assuming that the trial court abused its discretion when it instructed the jury on flight, the instruction caused no prejudice. The officers' testimony, coupled with Appellant's implausible statement that he discharged the pistol "straight in the air, straight ahead of [him]," (*Id.* at 537), provided sufficient evidence to support Appellant's convictions. Consequently, we find that the first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

### THE VERDICTS FOR FELOIOUS ASSAULT, AND THE ACCOMPANYING GUILTY VERDICTS ON THE FIREARMS SPEICIFCATIONS WERE AGAINST THE MANFIEST WEIGHT OF THE EVIDENCE.

**{¶36}** "Sufficiency of the evidence is a legal question dealing with adequacy." *State v. Pepin-McCaffrey*, 186 Ohio App.3d 548, 2010-Ohio-617, 929 N.E.2d 476, ¶ 49 (7th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). A challenge on the manifest weight of the evidence, on the other hand, focuses on the state's burden of persuasion. *Id.* A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 484 N.E.2d 717 (1st Dist.1983). Reversal should occur only "in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Andric*, 7th. Dist. Columbiana No. 06 CO 28, 2007-Ohio-6701, ¶ 19, citing *Martin* at 175.

**{¶37}** Furthermore, determinations regarding witness credibility, conflicting testimony and evidence weight "are primarily for the trier of the facts." *State v. Hunter*,

131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 995, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. It is in the purview of the jury whether to believe some, all or none of the testimony from witnesses and the jury can parse out credible portions of testimony from incredible portions. *State v. Mastel*, 26 Ohio St.2d 170, 176, 270 N.E.2d 650 (1971). Moreover, when presented with two fairly reasonable perspectives regarding the evidence or with two conflicting versions of events, neither of which can be ruled out as unbelievable, this Court has declined to choose which one is more credible. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

{¶38} Appellant argues that the officers provided conflicting testimony regarding the events of January 29, 2018, specifically the number of shots fired and the hand in which Appellant held the 9 mm pistol. Appellant further argues that neither officer stated during their interviews with Rodway that Appellant pointed the 9 mm pistol directly at the patrol car. Based on the officers' testimony, "coupled with Appellant's testimony that he never pointed the gun at the officers, an[d] in fact pointed it in the air," Appellant argues that "the weight of the evidence clearly favors a not-guilty finding." (Appellant's Brf., p 7.)

{¶39} Appellant's manifest weight argument is predicated for the most part on the officers' reenactments during their interviews of Appellant's movements on January 27, 2018. However, the videotaped interviews were not admitted in evidence for our review.

{¶40} After reviewing the evidence in the record, we find that the jury verdicts are supported by the manifest weight of the evidence. Officer Caraway testified at trial that Appellant continued to run from the patrol car but turned his body just enough to fire the 9 mm pistol at the patrol car. Officer Edwards provided similar testimony during his testimony. Appellant conceded that he fired the weapon because "[he] was trying to stop the officers from chasing [him.]" (*Id.* at 537.)

{¶41} The foregoing testimony supports the jury's conclusion that Appellant discharged the weapon at the patrol car. The jury could have credited the testimony of the officers, while disbelieving Appellant, whose version of events changed throughout his police interview.

{¶42} Further, Appellant provided conflicting testimony at the trial regarding his intentions and his actions on January 27, 2018. Appellant testified that he panicked and

Case No. 19 MA 0023

discharged the weapon in order to scare the officers into ending their pursuit, but then immediately discarded the weapon in order to show that he intended to inflict no physical harm. The jury may have reasoned that Appellant's stated goal of ending the police pursuit could have only been accomplished if Appellant discharged the weapon at the patrol car. Appellant also provided conflicting testimony regarding the direction in which he aimed the weapon, that is, he fired straight in the air and straight ahead of him.

{¶43} While it is true that the officers acknowledged inconsistencies between their trial testimony and the information that they provided to Detective Rodway during their interviews, we find nonetheless that the jury did not clearly lose its way and create such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. Accordingly, we find that the second assignment of error has no merit.

## CONCLUSION

{¶44} Because the record contains evidence from which reasonable minds might reach the conclusion that Appellant's motivation to flee the crime scene was due to consciousness of his guilt, we find that the trial court did not abuse its discretion in instructing the jury on flight. We further find that the verdicts are supported by the greater weight of the evidence because they turn on credibility determinations that are the province of the jury. Accordingly, Appellant's convictions are affirmed.

Waite, P.J., concurs.

Robb, J., concurs.

Case No. 19 MA 0023

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**