[Cite as *State v. Chute*, 2022-Ohio-2722.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 14-22-02

      v.

MICHAEL SCOTT CHUTE,              O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Union County Common Pleas Court
Trial Court No. 21-CR-0014

Judgment Affirmed

Date of Decision: August 8, 2022


APPEARANCES:

    *Todd W. Barstow* for Appellant

    *Raymond Kelly Hamilton* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Michael Scott Chute ("Chute"), appeals the judgment of the Union County Court of Common Pleas after he was found guilty (by a jury) of one count of rape and two counts gross sexual imposition ("GSI"). For the reasons that follow, the judgment of the trial court is affirmed.

{¶2} This genesis of this case involves the delayed disclosure by E.H. of sexual activity by Chute (her maternal grandfather) at his residence in Union County, Ohio occurring when she was between six and eight years old.[1]

{¶3} On January 28, 2021, Chute was indicted by the Union County Grand Jury on three criminal charges: Count One for rape in violation of R.C. 2907.02(A)(1)(b), (B), a first-degree felony and Counts Two and Three for GSI in violation of R.C. 2907.05(A)(4), (C)(2), both third-degree felonies. On February 1, 2021, Chute appeared for arraignment and entered not-guilty pleas.

{¶4} A jury trial commenced on October 18, 2021. During the trial, the State pursued an amendment of the indictment as to the dates of offenses (as to all counts) to conform to the testimony at trial (i.e., April 1, 2014 to April 1, 2016). The trial court granted the State's unopposed request. The jury found Chute guilty of rape and both counts of GSI. (Doc. Nos. 47, 48, 49, 51); (Oct. 19, 2021 Tr. at 156-158).

---

[1] E.H. was age 12 at the time of disclosure, and 13 at the time of trial.

{¶5} On December 14, 2021, the trial court held a sentencing hearing. The trial court merged Counts One and Two for the purposes of sentencing with the State electing to proceed on Count One. The trial court sentenced Chute to a prison term for life without the possibility of parole on Count One (rape) and 60 months in prison on Count Three (GSI) to be run consecutively. The trial court's judgment entry of conviction and sentencing was filed on December 15, 2021. (*Id.*)

{¶6} Chute filed a timely notice of appeal and presents one assignment of error for our review.

### Assignment of Error

**The Trial Court Erred And Deprived Appellant Of Due Process Of Law As Guaranteed By The Fourteenth Amendment To The United States Constitution And Article One Section Ten Of The Ohio Constitution By Finding Him Guilty Of Rape And Gross Sexual Imposition, As Those Verdicts Were Not Support By Sufficient Evidence And Were Also Against The Manifest Weight Of The Evidence. (R. Judgment Entry 12/15/21, Exhs. 4, 5,; T. Vol. 1, pp. 66-84; 87-101; Vol. 2, pp. 5-36).**

{¶7} In his sole assignment of error, Chute frames his argument to suggest that he is challenging the findings of guilt for Counts One, Two, and Three. In particular, he argues that such findings are not supported by sufficient evidence and are against the manifest weight of the evidence. Despite the wording of this assignment of error, Chute makes no specific argument that the State presented insufficient evidence to support Counts One and Two. Indeed, his argument in his merit brief is more narrowly tailored relating only to a sufficiency challenge as to

Count Three (GSI). Thereafter, Chute asserts that the findings of guilt under Count One (rape) and Count Two (GSI) are against the manifest weight of the evidence. Consequently, we will address the issues as set forth in his merit brief and not his assignment of error.

*Standard of Review*

{¶8} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997), *superseded by statute on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Thus, we address each legal concept, individually.

{¶9} "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *Id.* at 386, quoting Black's Law Dictionary 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.* "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds*, *Smith* at 89. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 1st Dist. Hamilton No. C-110097, 2011-Ohio-6267, ¶ 25. *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19, citing *Thompkins* at 386; *State v. Williams*, 3d. Dist. Logan No. 8-20-54, 2021-Ohio-1359, ¶ 26, quoting *State v. Croft*, 3d Dist. Auglaize No. 2-15-11, 2016-Ohio-449, ¶ 5.

{¶10} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). But we must give due deference to the fact-finder, because

> [t]he fact-finder * * * occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A

-5-

> reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.

*Williams*, 2021-Ohio-1359, at ¶ 8, quoting *State v. Dailey*, 3d Dist. Crawford, No. 3-07-23, 2008-Ohio-274, ¶ 7, quoting *State v. Thompson*, 127 Ohio App.3d 511, 529 (8th Dist.1998). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence Analysis*

**{¶11}** Notably, Chute moved the trial court for a judgment of acquittal pursuant to Crim.R. 29(A) at the conclusion of the State's case-in-chief, and later, renewed the request at the close of all evidence before the case was submitted to the jury. (*See* Oct. 19, 2021 Tr. at 94-96, 108-109). Both motions for judgment of acquittal were denied by the trial court. Thus, Chute has preserved the issues for our review.

**{¶12}** Chute was found guilty of GSI in violation of R.C. 2907.05(A)(4) under Count Three. R.C. 2907.05 provides in its pertinent parts:

(A) No person shall * * * cause another, not the spouse of the offender, to have sexual contact with the offender * * * when any of the following applies:

* * *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

* * *

(C) Whoever violates this section is guilty of gross sexual imposition.

R.C. 2907.05(A)(4), (C). "'The definition of sexual contact includes an express culpability requirement of "purpose."'" *State v. Wrasman*, 3d Dist. Auglaize No. 2-20-03, 2020-Ohio-6887, ¶ 10, quoting *State v. Curtis*, 12th Dist. Butler No. CA2008-01-008, 2009-Ohio-192, ¶ 90, citing R.C. 2907.01(B) and *State v. Mundy*, 99 Ohio App.3d 275, 295 (2d Dist.1994) and citing *State v. Dunlap*, 129 Ohio St.3d 461, 2011-Ohio-4111, ¶ 23-28. Importantly, R.C. 2907.01(B) defines "[s]exual contact" to mean "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶13} Hence, "the [S]tate is obligated to prove beyond a reasonable doubt that the defendant's purpose or specific intention in [causing E.H. to touch him] on the proscribed areas of the body set out in R.C. 2907.01(B) was sexual arousal or gratification of either [Chute] or [E.H.]." *Mundy* at 288; *State v. Barnes*, 2d Dist.

Montgomery No. 25517, 2014-Ohio-47, ¶ 20. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶14} "'[T]here is no requirement that there be direct testimony regarding sexual arousal or gratification.'" *State v. Young*, 12th Dist. Butler No. CA2018-03-047, 2019-Ohio-912, ¶ 47, quoting *State v. English*, 12th Dist. Butler No. CA2013-03-048, 2014-Ohio-441, ¶ 69. Rather, "'[w]hether the touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact.'" *Id.*, quoting *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 25. The fact of a touching, in and of itself, is not sufficient for a conviction. *Mundy* at 288-89. "The act of touching, however, may constitute strong evidence of intent." *In re Anderson,* 116 Ohio App.3d 441, 444 (12th Dist.1996).

{¶15} Importantly, the Revised Code does not define the term "erogenous zone". However, the State is relieved of the burden of proving that they are erogenous zones for the parts of the body specifically enumerated in the statute since they are *per se* erogenous zones. *State v. Kleyman*, 8th Dist. Cuyahoga No. 90817, 2008-Ohio-6656, ¶ 26, citing *State v. Ackley*, 120 Ohio Misc.2d 60, 2002-Ohio-

6002, ¶ 9 (C.P.). *See also State v. Harris*, 8th Dist. Cuyahoga No. 108377, 2020-Ohio-1497, ¶ 23. By inserting the words "without limitation" in R.C. 2907.01(B), the General Assembly left open the possibility that the parts of the body not traditionally viewed as erogenous zones may be considered erogenous zones depending on the facts of the case. *See State v. Miesse*, 2d Dist. Clark No. 99-CA-74, 2000 WL 1162027, *4-5 (Aug. 18, 2000) (stomach); *State v. Ball*, 4th Dist. Hocking No. 07CA2, 2008-Ohio-337, ¶ 26 (mouth); *Core v. State*, 10th Dist. Franklin No. 09AP-192, 2010-Ohio-6292, ¶ 21; *State v. Greenwood*, 10th Dist. Franklin No. 19AP-683, 2021-Ohio-921, ¶ 22 (arm and shoulder area); *State v. Solomon*, 8th Dist. Cuyahoga No. 109535, 2021-Ohio-940, ¶ 48 (feet and toes).

**{¶16}** For the parts of the body not traditionally considered erogenous zones and not specifically enumerated, at least one of our sister districts has adopted the definition of an erogenous zone as "'any part of the body of another, * * * which the mind of the offender or victim or a reasonable person would perceive as sexually arousing or gratifying to either the offender or the victim.'" *Kleyman*, *supra*, at ¶ 27, quoting *Ackley*, *supra*, at ¶ 16.

**{¶17}** Chute disputes whether he *caused* E.H. to have sexual contact with *his erogenous zone*. Like "erogenous zone", the Revised Code does not define "cause" in the context of R.C. 2907.05. Nevertheless, Black's Law Dictionary defines *cause* to mean "[s]omething that produces an effect or *result*". (Emphasis added.) *Black's*

*Law Dictionary*, cause (11th Ed.2019). The word *cause* is also defined by the Ohio Jury Instructions ("OJI") and defines a "[c]ause [a]s an act or failure to act which in a natural and continuous sequence directly produces the [harm], and without which it would not have occurred". *Ohio Jury Instructions*, Definitions Section 417.23 (Rev. Nov. 7, 2020). OJI further provides that a defendant is responsible for *natural consequences* as "the natural and foreseeable (consequences) (results) that follow in the ordinary course of events, from the act or failure to act". *Id.* These definitions of cause are synonymous with this court's definition of causation. *See State v. Goins*, 3d Dist. Allen No. 1-21-29, 2022-Ohio-985, ¶ 17-19*; State v. Carpenter*, 3d Dist. Seneca No. 13-18-16, 2019-Ohio-58 ¶ 47-54.

**{¶18}** To us, Chute's argument relates to the *nexus* between the *actus reas* and the *mens reas*, which requires us to examine the act, the culpable mental state, and the concurrence between the two–*causation*.[2] Put more plainly–Chute is challenging his culpability for E.H.'s touch of an erogenous zone. *See* R.C. 2901.21(A)(1)-(2); R.C. 2907.01(B); R.C. 2907.05(A)(4). In support of his argument, Chute focuses on the purpose of E.H.'s touch characterizing it as noncriminal, even innocent or playful behavior. On the contrary, the statutory scheme directs us to concentrate on Chute's culpable mental state. Pointedly,

> R.C. 2907.05(A)(4) provides explicit standards for those charged with enforcing that provision. The language utilized, and more particularly

---

[2] Significantly, Chute does not dispute E.H.'s age at the time of the offense as to his sufficiency-of-the-evidence argument.

the culpable mental state requirement that the offender's [or the victim's] touching of the prohibited areas of the body be done for the purpose or specific intention of sexual arousal or gratification [of either person], leav[ing] no discretion as to application and enforcement of that statute. It is not simply any or all contact with the proscribed areas of the body which the statute forbids; that would leave law enforcement officials to ask whether contact in any particular factual context constitutes criminal behavior or innocent conduct. Rather, it is a touching for the specific purpose of sexual arousal or gratification[,] which violates the statute. It is this culpability, the specific intent or purpose to achieve sexual arousal or gratification from the touching, which distinguishes criminal conduct from noncriminal, innocent behavior, such as accidental touching or a touching of the prohibited areas incidental to bathing, changing a diaper, or playful wrestling. R.C. 2907.05(A)(4) provides constitutionally adequate guidelines which enable law enforcement officers to enforce and apply that provision in an evenhanded manner.

*Mundy*, 99 Ohio App.3d at 289.

{¶19} To address Chute's assertions, we review the evidence presented at trial. The State called E.H. as a witness in its case-in-chief. E.H. testified that Chute *asked* her on several occasions to touch his genitals with her hand (and mouth) in his bathroom sometime between April 1, 2014 and April 1, 2016. Although E.H. did not recall any sexual contact occurring in the bathroom bathtub, she did remember taking baths with Chute. She testified that the events occurred when she was six years old, which she testified, coincided with her beginning elementary school.

{¶20} Next, the State offered the testimony of Detective Katie Archer ("Archer"). Archer testified that she interviewed Chute at his home (following

E.H.'s disclosure) where he admitted to taking a bath with E.H. and becoming aroused *by her touch*. The audio of Chute's interview was played for the jury during Archer's testimony in which Chute stated, "she touched *me* and then I touched *myself*; it is the thing I hate myself for." (Oct. 18, 2021 Tr. at 98); (State's Ex. 5). Archer testified that she interpreted his arousal statement to mean he had an erect penis. (*Id.*).

**{¶21}** Contrary to Chute's argument on appeal, his statement to Archer constitutes direct evidence that E.H. touched one of his erogenous zones. To us, it is irrelevant where E.H. specifically touched Chute since nothing in the statute requires the State to delineate a specific body part, and because Chute admitted that he was aroused by her touch. Thus, the jury was free to infer that E.H. touched Chute in an erogenous zone based upon his own admission.

**{¶22}** Additionally, Chute's choice of his words in his statement to Archer evidences a consciousness of guilt (for self-loathing) and further reveals that his purpose was for his own sexual arousal and gratification. "'[E]vidence of consciousness of guilt * * * [is evidence] of guilt itself.'" *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, ¶ 72, quoting *State v. Williams*, 79 Ohio St.3d 1, 11 (1997) and citing *State v. Moore*, 7th Dist. Mahoning No. 12 MA 8, 2013-Ohio-1435, ¶ 132. Importantly, "behaviors indicating a defendant's consciousness of guilt are among the surrounding facts or circumstances that the trier of fact can use

to infer the defendant's purpose." *Wrasman*, 2020-Ohio-6887, at ¶ 27. Certainly, if E.H.'s touch was purely innocent and playful and not orchestrated by Chute, he would not feel any degree of culpability whatsoever (let alone) self-loathing.

{¶23} Next, we turn to Chute's sufficiency challenge that he did not *cause* E.H. to touch one of his erogenous zones. Here, the record supports that Chute had "shaped and groomed" E.H.'s concepts of right and wrong touches (also known as good and bad touches) by giving her auditory directions to touch his genitals with her hand (and her mouth) in the very same bathroom over an extended period of time at a very young age. *See State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20-21; *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir.1997), fn. 2 ("'Shaping and grooming' describes the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point of intercourse"). On this point, E.H. testified that she did not understand that her behaviors were abnormal until she divulged them to a friend in 5th grade. E.H.'s testimony supports the inference that Chute normalized sexual behavior familiarizing her with touching his genitals in the bathroom. *See State v. C.D.S.*, 10th Dist. Franklin No. 20AP-355, 2021-Ohio-4492, ¶ 39. Thus, it is a reasonable inference for the jury to determine that Chute conditioned E.H. to perform those acts as a *result* of his "shaping and grooming" her–to sexually arouse and gratify Chute–the ultimate object of his motivation. That is–by Chute getting into a bathtub with E.H., on multiple

occasions, that sexual contact with one of his erogenous zones was both invited and likely to occur. *See State v. Goins*, 2022-Ohio-985, at ¶ 19; *State v. Carpenter*, 2019-Ohio-58, at ¶ 53.

{¶24} Indeed, a child victim of sexual abuse need not be aware that sexual activity is occurring for criminal liability to attach. *See State v. Johnston*, 12th Dist. Warren No. CA2021-09-085, 2022-Ohio-2097, ¶ 3-9, 22-23, 30. Chute's facilitation of favorable conditions for E.H.'s exploratory touching of his erogenous zone through his conditioning of her and by bathing with her resulted in the prohibited touching at issue for his stated arousal and ultimate self-gratification. We decidedly reject the proposition that such activity would now insulate him from criminal liability.

{¶25} Viewing the evidence presented in a light most favorable to the prosecution, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that Chute caused E.H. to touch one of his erogenous zones based upon the testimonies of E.H. and Archer, and State's Exhibits 4 and 5. As such, Chute's conviction for GSI (under Count Three) is based on sufficient evidence.

{¶26} Having concluded that the jury's GSI finding of guilt (under Count Three) is based on sufficient evidence, we now turn to address his arguments that the findings of guilt for rape (under Count One) and GSI (under Count Two) are against the manifest weight of the evidence.

*Manifest Weight of the Evidence Analysis*

**{¶27}** In his manifest-weight-of-the-evidence argument, Chute's asserts that E.H. had credibility issues as to her difficulty recalling events and by her delayed disclosure of the sexual abuse.[3]

**{¶28}** Here, as we detailed in our sufficiency analysis related to Count Three, E.H. (now 13) testified at trial to events that occurred when she was six. Moreover, in addition to E.H.'s testimony, the State presented several witnesses including her middle school counselor who testified as to E.H.'s initial disclosure of sexual abuse; E.H.'s forensic interviewer; E.H's pediatric nurse practitioner; and E.H.'s mental health advocate, all of whom interacted with her at Nationwide Children's Hospital in Columbus, Ohio at age 12.

**{¶29}** The State also presented Cynthia Kuhr ("Kuhr"), an expert witness qualified in the area of delayed or incremental disclosures. Kuhr testified that certain factors may play a role in delayed or incremental disclosure such as family structure, the age of the child at the time of the offense, whether they have developed the concepts of right and wrong, their level of trust based upon the relationship,

---

[3] Although, Chute raises a manifest-weight-of-the-evidence argument related to Count Two, we decline to address his argument. As the finding of guilt as to Count Two merged with Count One for the purposes of sentencing (with the State electing to proceed on Count One), the finding of guilt related to Count Two never evolved into a "conviction" since Chute received no sentence under Count Two. *See State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 16, citing *State v. Henderson*, 58 Ohio St.2d 171, 178 (1979). Thus, we need not address his argument challenging the manifest weight of the evidence as to Count Two because error, if any, would be harmless beyond a reasonable doubt. (*See* Doc. No. 52). *See also Ramos* at ¶ 13, 18; *State v. Adkins*, 3d Dist. Allen No. 1-19-71, 2020-Ohio-6799, ¶ 40.

whether the alleged perpetrator had easy access to their home, and whether the child feared that the family-structure dynamics would change if they disclosed.

**{¶30}** "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671, ¶ 13, citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus.

**{¶31}** Significant to us, the jury had the opportunity to observe E.H. and the State's other witnesses while testifying both under direct and cross-examination. The jury "is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984).

**{¶32}** Here, notwithstanding Chute's argument, it is evident that the jury found E.H.'s testimony (related to Count One) to be credible despite any perceived inconsistencies and notwithstanding her delayed disclosure. Certainly, it is within the province of the jury to parse out the credible portions of E.H.'s testimony, principally as it pertained to her ability to recall certain events and her delayed disclosure from what is not credible. *See State v. Wainwright*, 7th Dist. Mahoning No. 119 MA 0023, 2020-Ohio-623, ¶ 37, citing *State v. Mastel*, 26 Ohio St.2d 170,

176 (1971). Indeed, the jury "was in the best position to weigh the evidence, and was free to believe all, some or none of [E.H.]'s testimony." *State v. Muhleka*, Montgomery App. No. 19827, 2004-Ohio-1822, ¶ 53, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993).

**{¶33}** Here, E.H.'s statements regarding Count One were uncontroverted and the fact that E.H. was unable to remember all of the details she disclosed does not automatically render her testimony unreliable with respect to the details that she did recall. *See State v. Cook*, 3d Dist. Union No. 14-19-26, 2020-Ohio-3411, ¶ 86. Consequently, we will not reverse Chute's conviction based on mere inconsistencies in her statements because the evidentiary weight and witness-credibility determinations are reserved for the jury. *See id.*

**{¶34}** Upon our review of the record, we cannot conclude that the jury's witness-credibility determinations were unreasonable in light of the evidence presented at trial as to the jury's finding of guilt under Count One. The evidence supporting Chute's rape conviction (under Count One) is weightier than the evidence against it. Consequently, we do not conclude that the jury clearly lost its way creating such a manifest miscarriage of justice that his rape conviction must be reversed and a new trial ordered.

**{¶35}** Accordingly, Chute's sole assignment of error is overruled.

{¶36} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and WILLAMOWSKI, J.J., concur.**

**/jlr**